UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FARMERS NEW CENTURY INSURANCE COMPANY, ) ) ) Plaintiff, ) ) v. ) ) THE ESTATE OF PHILLIP E. BROWN, ) JR., MIDEAST DELIVERY SOLUTIONS ) LLC, RONALD HARPER, and BITCO ) GENERAL INSURANCE CORPORATION ) A/S/O COUNTY OF SPENCER, ) ) Defendants. ) | No. 1:22-cv-1534-JRS-MJD |

**Order on Evidentiary Motions**

This matter is before the Court on several motions regarding evidentiary matters. Defendants' Motions for Protective Order, (ECF Nos. 87, 90), are **denied**. Plaintiff's Motion for Leave to File Final Witness and Exhibit List, (ECF No. 98), is **denied**. Plaintiff's Motions in Limine, (ECF No. 116), is **granted in part** and **denied in part**. Defendant Estate's Motions in Limine, (ECF Nos. 103, 118), is **granted in part** and **denied in part**. Defendant Harper's Motions in Limine, (ECF No. 114), is **granted in part** and **denied in part**, and Harper's Motion in Limine Limiting Testimony of Tyler Schoettmer and Mideast Delivery Solutions, (ECF No. 117), is **denied**.

**I.     Motions for Protective Order**

Defendants Harper and the Estate have moved for a protective order under Rule 26(c). Rule 26(c) provides that if certain discovery is sought that would cause a person

or party "annoyance, embarrassment, oppression, or undue burden or expense," the Court "may, for good cause, issue an order . . . (A) forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1).

The Parties conferred on May 9. (Mot. Protective Order ¶ 7, ECF No. 87.) Harper represents that "Plaintiff advised it not only sought to take the deposition of Christine Schmitt, but it also sought to take a second deposition of Mideast's corporate representative, and an additional undisclosed witness named Brahim." (*Id.*) Harper argues he is "extremely prejudiced by having to expend time and costs (including travel and hotel costs for Harper specifically) associated with these depositions for an undisclosed witness whose testimony is not admissible for trial and for a witness whose testimony has already been captured by video." (*Id.* ¶ 11.)

The Parties met with Magistrate Judge Dinsmore on May 10. At this conference, "Plaintiff admitted that none of the witnesses yet meet the FRE 804(a) definition of unavailability for trial." (Mot. ¶ 8, ECF No. 87.) After the conference, Plaintiff noticed the depositions of Christine Schmitt and Tyler Schoettmer, the latter of whom is Mideast's 30(b)(6) representative who was deposed in 2023. The depositions were scheduled for May 30th and 31st; the final pretrial conference was on May 30. Magistrate Judge Dinsmore gave Defendants permission to move for a protective order if Farmers noticed these depositions but noted that it may be a more appropriate topic for a motion in limine. (Conf. Tr. 16–17, ECF No. 92.)

Farmers contends that this is not a discovery dispute, so a protective order is inappropriate here. (Pl.'s Opp. Mot. Protective Order 1, ECF No. 94.) The Court

2

agrees. This matter is best left to the Parties' motions in limine and Plaintiff's motion for leave. The Motions for Protective Order, (ECF Nos. 87, 90), are **denied**.

## II.     Motion for Leave to File Final Witness & Exhibit List

On May 16, two weeks before the final pretrial conference and approximately one month before trial, Farmers filed this motion seeking the Court's permission to file belated final witness and exhibit lists. The deadline to file the final witness and exhibit lists was October 13, 2023. (Amended CMP, ECF No. 53 at 2.)

### A. Legal Standard

This motion is, essentially, a request to extend the deadline to file a final witness and exhibit list. If a party seeks to extend a deadline after it has passed, the Court may extend the deadline only if a party "failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). The Seventh Circuit factors for a claim of excusable neglect "include the danger of prejudice to the [nonmoving party], and the reason for the delay." *Murphy v. Eddie Murphy Prods., Inc.*, 611 F.3d 322, 324 (7th Cir. 2010). If the moving party had an opportunity to discover the information before the deadline, the district court may properly deny the motion to extend. *See Grayson v. O'Neill*, 308 F.3d 808, 816 (7th Cir. 2002).

### B. Discussion

Farmers argues that Schmitt and Berrouche "are not a surprise to any party" because they were named by Schoettmer in his 30(b)(6) deposition and were "witnesses in the control of Defendant Mideast." (Pl.'s Mot. Leave 2, ECF No. 98.) Farmers points to its Rule 26 initial disclosures and preliminary witness list, both of which reference "employees or representatives" of Defendant Mideast. (*Id.* at 3.)

3

However, cases from this district indicate that the general category of "employees or representatives" is not specific enough to prevent unfair surprise, and the fact that Schmitt and Berrouche work or worked for Mideast does not absolve Farmers of the responsibility to timely disclose them as witnesses.

To support its position that witnesses need not be specifically named in a final witness list, Farmers cites *J.A.W. v. Evansville Vanderburgh School Corporation*, No. 3:18-cv-00037-TWP-MPB, 2019 WL 13021013 (S.D. Ind. Aug. 30, 2019). In that case, the defendant requested leave to file a belated final witness list roughly a month after the final witness list deadline. *Id.* at *1. While the plaintiff did not object to filing a belated witness list generally, they did object to a witness whom they argued had not been disclosed with particularity. *Id.* The defendant responded that it should be permitted to include the disputed witness because the witness had been listed in its initial disclosures under the umbrella "Plaintiff's parents" and because the witness had been listed by name by the plaintiff. *Id.* The court in *J.A.W.* found that any error was harmless because it was "difficult to see how Plaintiff would be prejudiced by a belated disclosure, particularly because there is an indication [that the witness] was listed in the parties' initial disclosures." *Id.* at *2.

That case can be distinguished from this one, however. First, the parties in *J.A.W.* filed a motion to extend the deadline for final witness and exhibit lists until after any dispositive motions were ruled upon. *Id.* at *1. That did not happen here. Farmers suggested in a status conference with Magistrate Judge Dinsmore that the Parties were waiting for a ruling on their motion for summary judgment before filing a final

4

witness list, (May 10 TSC Tr. 7–8, ECF No. 92), but no one filed any motion requesting an extension of the deadline, and furthermore, the instant motion for leave was filed not immediately upon the denial of summary judgment (or denial of reconsideration), but months later.  Second, the witness in question in *J.A.W.* had been disclosed by the plaintiff—the party allegedly being prejudiced—as well as the defendant.  Even the umbrella disclosure of "Plaintiff's parents" is extremely narrow, leaving no question as to their identities, unlike the umbrella disclosure of "employees or representatives of Mideast."  Defendants also point out that Berrouche and Schmitt would not be expected to be representatives of Mideast because they were independent contractors over whom Mideast "retained little control."  (Defs.' Opp. Mot. Leave 3, ECF No. 121.)  Here, not only is the extent of the delay distinguishable over *J.A.W.*, but so too is the possible universe of witnesses Farmers's omnibus disclosure entailed.

This case is more akin to *Equal Employment Opportunity Commission v. Village at Hamilton Pointe*, No. 3:17-cv-00147-RLY-MPB, 2020 WL 1663130 (S.D. Ind. Jan. 16, 2020).  In that case, the court found that the EEOC did not have adequate notice as to two of the witnesses where the preliminary witness list included "Hamilton Pointe supervisor(s)" and where "only one individual's testimony . . . mentions [the witnesses'] names one time each" acknowledging that they were employed in the relevant roles at the relevant time.  *Id.* at *4.  Specifically,

> [w]ith respect to Hamilton Pointe's naming of "supervisor(s) who managed Charging Parties/Class Members," there is no evidence before the Court about how many supervisors this would have entailed. Regardless of

> that number, though, the EEOC does not bear the burden of determining which supervisors Defendants may intend to call as witnesses. Requiring the EEOC to have viewed all of the supervisors as potential witnesses and to have identified those that Defendants would want to designate as witnesses would have required EEOC to undertake an obligation that the Federal Rules of Civil Procedure assigned to the Defendants. Moreover, *the combined generic references to supervisors and the deposition references were not sufficient* to inform the EEOC that Henderson and Lemmons could be witnesses at trial.

*Id.* at *5 (emphasis added) (internal citation omitted).

In another case, at the final witness list stage, Defendant moved to strike four witnesses on the plaintiff's final witness list that had not been previously disclosed. *Zurwell v. Hill's Pet Nutrition, Inc.*, No. 1:05-CV-1475-WTL-DML, 2010 WL 11561393, at *1 (S.D. Ind. Mar. 9, 2010). In denying the motion, the court rejected the plaintiff's argument that the defendant knew the plaintiff eventually would disclose some of the witnesses simply because some were named during deposition testimony and some were the defendant's employees. *Id.* at *3.

These cases are instructive. Case management deadlines are important, serving the crucial purposes of streamlining litigation and preventing surprise to the parties. As explained in a case in which witnesses on the trial witness list had not been disclosed in the final witness list,

> [t]he Court's Case Management Plan is designed so that the parties must identify their universe of witnesses well ahead of trial, opposing parties may depose those individuals if they desire, and the parties can whittle their witness lists down to the individuals they intend to call at trial shortly before trial takes place. The Case Management Plan does not allow parties to identify

6

> witnesses for the first time in the trial witness list, yet that is what Plaintiff did in this case.

*Bridgewater v. City of Indianapolis*, No. 1:14-cv-01370-JMS-MJD, 2016 WL 5371841, at *1 (S.D. Ind. Sept. 26, 2016).

The only reasons for untimely disclosure that Farmers has put forth in its motion are that it believed the October 13 deadline was "not entirely clear," (Pl.'s Mot. Leave 4 n.2, ECF No. 98), and that it was not initially planning on obtaining testimony from Berrouche or Schmitt, (*id.* at 2). Rather, the Court's own subsequent rulings served as the "catalyst that indicated to Farmers" that this testimony should be sought. (*Id.* at 5.) Farmers elaborated during the final pretrial conference that it felt its evidence without this testimony was sufficient to prevail on summary judgment and that it only decided to seek the additional discovery after the Court mentioned it in its rulings. Counsel continued that the fair administration of justice dictated allowing this testimony. (*See id.* at 6.)

As to its first argument, Farmers suggests that the final witness list deadline should have been extended because trial had previously been continued. (*Id.* at 4 n.2.) Whether the deadline should have been extended is irrelevant; it was not. This was clear from Magistrate Judge Dinsmore's Minute Entry for the status conference held on January 19, 2023. (ECF No. 53.) The deadline for final witness and exhibit lists is in bold on the second page of a three-page order. No attempt, until now, was made to seek clarity on this deadline or make an earlier request for an extension.

As to Farmers' claim that it was not initially planning to call Schmitt or Berrouche until after the Court catalyzed the notion in its denials of summary judgment and

reconsideration, it is still unclear why Farmers waited until just over a month before trial to file the instant motion. It knew of these witnesses well before the deadline since they were revealed in Schoettmer's deposition. *See Grayson*, 308 F.3d at 816. The Court denied summary judgment in early February, (ECF No. 69), and denied reconsideration of that order in early April, (ECF No. 79). However, Farmers did not reveal until May 9, just over a month before trial and well after the initial denial of summary judgment, that it planned to call Schmitt and Berrouche. (Harper's Mot. Protective Order ¶ 7, ECF No. 87.) Only now has Farmers requested, essentially, an extension of the deadline to file its final witness and exhibit lists. In the meantime, Defendants have "detrimentally relied on Farmers' Preliminary Witness and Exhibit List when making discovery decisions" and "may have requested additional depositions if they knew those individuals would be called as witnesses at trial." (Defs.' Opp. Mot. Leave 3, ECF No. 121.) Farmers' lack of diligence in this matter cannot be ignored or overcome by a plea to fundamental fairness. Its initial decision concerning what evidence to seek and its subsequent decision to delay seeking leave to supplement that evidence were entirely within its control; this is not the kind of "excusable neglect" contemplated by Rule 6. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993) (noting that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect"). It would also prejudice Defendants to, at this late stage, allow two witnesses who were not disclosed. *See id.* at 395. Again, that Defendants were aware of Schmitt and Berrouche's existence does not equate to an absence of prejudice;

Defendants prepared their litigation strategy based on the information disclosed by Farmers and are entitled to rely on that information. *See Bridgewater*, 2016 WL 5371841, at *1.

    C. Conclusion

Farmers's Motion for Leave to File its Final Witness and Exhibit List, (ECF No. 98), is **denied**. Farmers may not call Christine Schmitt or Brahim Berrouche at trial.

### III.    Plaintiff's Motions in Limine

"A motion in limine is merely a 'pretrial request that certain inadmissible evidence not be referred to or offered at trial.'" *Empire Bucket, Inc. v. Contractors Cargo Co.*, 739 F.3d 1068, 1071 (7th Cir. 2014) (quoting Black's Law Dictionary 1109 (9th ed. 2009)). Evidence should be excluded at this stage only if it is "clearly not admissible for any purpose." *Barnes v. General Motors LLC*, No. 4:20-cv-0087-TWP-KMB, 2023 WL 3436098, at *1 (S.D. Ind. May 12, 2023) (citing *Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400–01 (N.D. Ill. 1993)). A denial at this stage does not mean the evidence is certain to be admitted. All other evidentiary rulings will be made at trial subject to the Parties' offers and objections.

Farmers seeks to exclude the following evidence:

**1. Plaintiff's MIL No. 1: Any argument or evidence related to damages or injuries**

Farmers notes that this case merely seeks to clarify what Farmers' responsibility will be if Harper is successful in obtaining damages in his suit against Brown. Farmers argues that any evidence tending to show Harper's injuries, inability to work, or the cost of the underlying liability case would be irrelevant, prejudicial, and

9

confusing. Defendants object on the grounds that the jury will be confused about the nature of the case and the remedy being sought if Brown's death is not mentioned, but understand that the extent of Harper's injuries and the particular manner of Brown's death may not be relevant.

Plaintiff's MIL No. 1 is **granted** to the extent that opening statements concerning this subject matter are limited to the content of the stipulated case synopsis, and otherwise **denied** subject to contemporaneous objections at trial. Mentions of Harper's injury or the fact that Brown passed away due to the accident are not "clearly not admissible for any purpose." *Barnes*, 2023 WL 3436098, at *1. However, it seems that the case synopsis fully covers what the Defendants seek to elicit. Of course, the stipulation requires the introduction of no further evidence.

2. **Plaintiff's MIL No. 2: Any evidence or opinion testimony bearing on the purpose, meaning, or interpretation of any insurance policy terms**

Farmers argues that the application of the policy language to the facts is a question of law and should not be decided by the jury. Defendants do not object.

Plaintiff's MIL No. 2 is **granted**. The interpretation of the contract is a legal issue. *See, e.g.*, *Ryan v. TCI Architects/Engineers/Contractors, Inc.*, 72 N.E.3d 908, 913 (Ind. 2017).

3. **Plaintiff's MIL No. 3: Any evidence pertaining to Phillip E. Brown, Jr.'s expectation that he was covered by insurance while driving as a courier**

Farmers argues that any information about the policy premium, why Brown purchased the policy, or his expectations of his coverage is neither probative of nor material to any triable issue and risks confusing the jury and unfairly prejudicing Farmers. Defendants do not object.

Plaintiff's MIL No. 3 is **granted**. Evidence of Brown's expectations regarding any insurance policy are irrelevant to his conduct and would be speculative, since Brown is deceased.

4. **Plaintiff's MIL No. 4: Whether payment was issued to Phillip E. Brown, Jr. for deliveries the date of the accident**

Farmers argues that whether Brown's Estate actually received payment for picking up or delivering merchandise is irrelevant to whether he was carrying personal property for a fee by the terms of the insurance policy. Defendants object, arguing that whether Brown's Estate received payment is key information in the jury's determination of whether Brown was driving for a fee and that disallowing information regarding payments would be more confusing to the jury.

Plaintiff's MIL No. 4 is **denied**. Evidence regarding whether Brown or his estate was paid for deliveries made on the date of the accident is an indication of whether he was driving for Mideast at the time of the accident. That receiving payment is not included in the language of the policy is immaterial, as it is the jury's job to decide whether Brown was delivering, and it is the Court's job to decide whether the policy applies.

5. **Plaintiff's MIL No. 5: Lay witnesses' testimony that is not based on personal knowledge**

Plaintiff's MIL No. 5 is **granted**. Rule 602 prohibits witnesses from testifying unless they have personal knowledge of the matter about which they are testifying.

11

### 6. Plaintiff's MIL No. 6: "Golden rule" arguments inviting the jurors to place themselves in Defendants' position

Plaintiff's MIL No. 6 is **granted**. These sorts of arguments are "universally recognized as improper because it encourages the jury to depart from the neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *United States v. Roman*, 492 F.3d 803, 806 (7th Cir. 2007) (quoting *United States v. Teslim*, 869 F.2d 316, 328 (7th Cir. 1989)).

### 7. Plaintiff's MIL No. 7: Any argument or evidence pertaining to the credibility of witnesses

Farmers argues that witnesses may not testify to opinions concerning whether another witness has testified truthfully because this would invade the province of the jury. Defendants object that Plaintiff's argument is overly broad, and the Federal Rules of Evidence expressly permit parties to test the credibility of trial witnesses.

Plaintiff's MIL No. 7 is **denied**. The admissibility of any such evidence will be measured against the Federal Rules of Evidence. For example, Rule 608 permits a witness to testify about the truthfulness of another witness in the form of testimony regarding their reputation or opinion testimony. Specific instances of untruthfulness are permitted only on cross-examination.

A witness may not opine that another witness's *testimony* was or was not truthful; that is a key function of the jury. *United States v. Nunez*, 532 F.3d 645, 652 (7th Cir. 2008). However, this does not mean witnesses cannot offer testimony as to whether the witness has a reputation for truthfulness or whether they believe the witness is truthful. The jury will evaluate those witnesses' credibility as well.

12

8. **Plaintiff's MIL No. 8: Information or evidence pertaining to any other lawsuits in which any of the parties have been or currently are involved**

Farmers argues evidence of or mention that the Parties are engaged in other lawsuits is irrelevant to the decision that the jury is making here and would confuse the jury. Defendants do not object. In Harper's MIL No. 2, he seeks exclusion of the same. However, Farmers objects, to this, in what amounts to a withdrawal of Plaintiff's MIL No. 8, arguing that Farmers should be permitted to reference Harper's other litigation because it is anticipated that Harper will provide trial testimony in this matter that is contrary to his position in other litigation. Specifically, Harper presents a theory in the other litigation that Phillip Brown was acting within the course and scope of his employment with Mideast at the time of the crash. This information may be necessary for rebuttal or impeachment purposes, and to show evidence of bias.

Plaintiff's MIL No. 8 is **denied** as withdrawn.

9. **Plaintiff's MIL No. 9: Any prior settlement discussions, proposals, negotiations, or alleged settlement**

Farmers argues that agreements or any statements made in connection with the parties' participation in settlement negotiations or mediation are excluded under Rule 408. Defendants do not object.

Plaintiff's MIL No. 9 is **denied**. Rule 408 prohibits the use of "conduct or a statement made during compromise negotiations about the claim" to "prove or disprove the validity or amount" of the claim. It also prohibits the use of such conduct or statements for the purpose of impeachment by a prior inconsistent statement. However, "Rule 408 is not an absolute ban on all evidence regarding settlement

13

negotiations. The rule permits evidence that is otherwise discoverable or that is offered for a purpose other than establishing liability." *Bankcard Am., Inc. v. Universal Bancard Sys., Inc.*, 203 F.3d 477, 484 (7th Cir. 2000) (collecting cases). Thus, while Defendants' failure to object indicates it does not intend to tread in these waters, the offer and objection to any such evidence must be treated in context at trial.

10. **Plaintiff's MIL No. 10: Any reference to the size, reputation, location, and lawyers of Lewis Brisbois Bisgaard & Smith, LLP and Farmers New Century Insurance Company**

Farmers argues that references to the location, size, or reputation of Farmers itself or the law firm that has represented Farmers in this case would be irrelevant and have the potential to create unfair prejudice, mislead the jury, and confuse the issues. Defendants do not object.

Plaintiff's MIL No. 10 is **granted**. Farmers' size and reputation, and that of its counsel, are irrelevant.

### IV. Defendants' Joint Motions in Limine

Both the Estate and Harper seek to exclude the following evidence:

1. **Defendants' MIL No. 1: Any evidence that Phillip E. Brown, Jr. had a commercial insurance policy with Farmers or that the commercial insurance policy with Farmers was cancelled**

Specifically, Defendants seek to exclude Plaintiff's Exhibits 4, 5, and 6. Defendants argue that whether Brown had a commercial insurance policy prior to the accident or whether he cancelled the policy has nothing to do with what Phillip Brown was doing at the time of the accident. The jury is not even determining whether coverage applies; they are determining only whether he was delivering

14

products for a fee. Additionally, evidence about the commercial insurance policy has low probative value and significant risk of prejudice. Farmers objects, arguing that the evidence is relevant because it goes to Brown's intent in having a policy with Farmers and that he did not want commercial coverage even though he drove his car for a commercial purpose.

Defendants' MIL No. 1 is **denied**. Evidence relating to what kind of policy Brown did or did not have—or formerly had and cancelled—may or may not be relevant to the narrow issue of whether he was driving for a fee at the time of the accident, but needs to be determined in context. Farmers may introduce Exhibits 4, 5, or 6, subject to contemporaneous objections at trial.

**2. Defendants' MIL No. 2: Testimony from Christine Schmitt and Brahim Berrouche**

Defendants' MIL No. 2 is **granted**. This issue is addressed fully in the Court's disposition, and denial, of Plaintiff's Motion for Leave to File Final Witness and Exhibit Lists.

**3. Defendants' MIL No. 3: Plaintiff's Exhibits 14 and 15**

Harper and the Estate both seek to exclude photos that they argue do not appear on any prior exhibit list, Exhibits 14 and 15. The Estate also objected to Exhibits 14 and 15 on the grounds that the photos contain inadmissible hearsay and because Farmers has not previously disclosed a witness who can lay proper foundation for or authenticate the photos. Farmers objected, arguing that Exhibits 14 and 15 can be authenticated in a number of ways, and they were previously identified by Harper in

15

his preliminary exhibit list as "Police photographs regarding the April 28, 2022, crash." (ECF No. 29).

Defendants' MIL No. 3 is **denied**. Harper's preliminary exhibit list includes the photos and Farmers has indicated that it can provide a witness to authenticate them. As discussed at the final pretrial conference, the Court encourages stipulations as to authenticity if appropriate.

## V.    Harper's Motions in Limine

Harper additionally seeks to exclude the following evidence:

**1. Harper's MIL No. 1: Plaintiff's Exhibits 12 and 13**

Harper seeks to exclude Plaintiff's Exhibits 12 and 13, labeled as "Driver 4414 Phil Brown Daily Summaries April 18, 2022–April 28, 2022" on the grounds that they were not disclosed in discovery nor on Plaintiff's preliminary exhibit list. Farmers objects, arguing that the summaries were part of the subcontractor folder for Phillip Brown that Mideast produced and was part of Mideast's and BITCO's preliminary exhibit list and initial disclosures.

Harper's MIL No. 1 is **denied**. These exhibits were disclosed, and Harper has not put forth any other reasons for their exclusion.

**2. Harper's MIL No. 2: Any discussion of other litigation involving the Parties, including Harper's worker's compensation and underinsured or uninsured claims**

Harper argues that this evidence is irrelevant and is inherently prejudicial because of the strong negative connotation that litigiousness can carry. Farmers objects, arguing that it should be permitted to reference Harper's other litigation because it is anticipated that Harper will provide trial testimony in this matter that

is contrary to his position in other litigation. Specifically, Harper presents a theory in the other litigation that Phillip Brown was acting within the course and scope of his employment with Mideast at the time of the crash. This information may be necessary for rebuttal or impeachment purposes, and to show evidence of bias.

Harper's MIL No. 2 is **denied**. Farmers may reference other claims and arguments of Harper for rebuttal or impeachment purposes.

**3. Harper's MIL No. 3: Any undisclosed expert opinions.**

Farmers does not object. Harper's MIL No. 3 is **granted**.

**4. Harper's MIL No. 4: Any evidence regarding how, when, or why Harper hired counsel**

Harper argues that this evidence is not relevant. Farmers does not object. Harper's MIL No. 4 is **granted**.

**5. Harper's MIL No. 5: Any evidence regarding any witness's criminal history**

Harper argues such evidence should be excluded because the witnesses have not been convicted of the types of crimes described in Rule 609. Farmers does not object.

Harper's MIL No. 5 is **denied**. This is a premature request that is unsupported by specifics. Rule 609 allows for attacking a witness's character for truthfulness if they have been convicted of a felony or if the elements of the crime required proving a dishonest act or false statement. To know whether the evidence of a witness's prior conviction is admissible, the Court would need to know what kind of crime they had been convicted of and for what purpose the evidence is being offered.

## VI. Harper's MIL to Limit the Testimony of Tyler Schoettmer

Harper filed a separate motion in limine seeking to limit Schoettmer's testimony (1) regarding what Phillip Brown was doing at the time of the accident on the grounds that Schoettmer lacks personal knowledge; (2) regarding what Phillip Brown "would have known"; and (3) regarding conversations between Brahim Berrouche, Christine Schmitt, and Phillip Brown on the grounds that these conversations are hearsay. Harper argues that Schoettmer's testimony on these topics is speculation and should be excluded because the authoritative nature of a 30(b)(6) deposition has the potential to unduly influence or confuse the jury.

Farmers counters that Schoettmer has personal knowledge about the custom, practice, and procedure of Mideast's deliveries as well as what happened on April 28, 2022, and how the company responded. The statements are not hearsay because they are statements by an adverse party and are admissible under Rule 801(d)(2). The phone conversations are offered to explain the actions taken by Mideast and the knowledge Mideast had regarding the accident, not for the truth of the matter asserted in any of the statements in the phone conversations.

Harper's MIL to limit Tyler Schoettmer's testimony is **denied**. The bounds of Schoettmer's testimony individually and as Mideast's 30(b)(6) representative are best left to contemporaneous objections at trial.

## VII. Conclusion

Defendants' Motions for Protective Order, (ECF Nos. 87, 90), are **denied**. Plaintiff's Motion for Leave to File Final Witness and Exhibit List, (ECF No. 98), is

18

**denied**. Plaintiff's Motions in Limine, (ECF No. 116), is **granted** as to MIL Nos. 2, 3, 5, 6, and 10, and **denied** as to MIL Nos. 1, 4, 7, 8, and 9. Defendant Estate's Motions in Limine, (ECF Nos. 103, 118), is **granted** as to MIL No. 2, and **denied** as to MIL Nos. 1 and 3. Defendant Harper's Motions in Limine, (ECF No. 114), is **granted** as to MIL Nos. 3 and 4, and **denied** as to MIL Nos. 1, 2, and 5. Finally, Harper's Motion in Limine Limiting Testimony of Tyler Schoettmer and Mideast Delivery Solutions, (ECF No. 117), is **denied**.

    **SO ORDERED.**

Date: 6/12/2024

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution to all registered counsel by CM/ECF